WILLEY VS REYNOLDS.

Opinion delivered June 12, 1899.

*Assignment for Benefit of Creditors—Omission from deed of amounts due Preferred Creditors.*

The omission of the assignor to state the amount due from him

to each of his preferred creditors mentioned in a deed of assignment, will not of itself render the deed void.

Appeal from the United States Court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Action by attachment by Reynolds, Davis & Co. against C. E. Willey and another, in which Herbert Kneeland interpleaded for the property attached. From a judgment for plaintiffs, defendants and interpleader appeal. Reversed.

C. E. Willey and O. W. Willey were merchants doing business under the firm name of C. E. Willey & Son at Ft. Gibson, Indian Territory, and on the 21st day of December, 1894, executed and delivered to Herbert Kneeland (interpleader, and one of the appellants here) their certain deed, by the terms of which they transferred to him "all of the stock of merchandise, goods, wares, and fixtures of every description in the storehouse used and occupied by us at Ft. Gibson, Indian Territory, including show cases, counters, shelving, safe, scales, lamps, etc.; also all notes and accounts and other evidences of indebtedness due us from any persons whatsoever, and all personal property," etc., not exempt by law; and out of the proceeds of sales and collections the assignee was directed to pay creditors as follows: "First. He shall pay to Hutchings & English the sum of one hundred dollars, their fee for services in preparing and perfecting this assignment,— same not being for any future services,—and the claim of J. Foster & Son, of Ft. Smith, Ark., and Shibley-Wood Grocer Company of Van Buren, Ark. These are to be paid in full. Second. The residue, if any, shall be paid to Fannie Willey, as her interest may appear, towards the settlement of her claim, and to Bloch Queensware Co., of Ft. Smith, Ark., as their interest may

appear, in settlement of their claim. Third. The residue, if
any, shall be paid toward the satisfaction of the claim of Rey-
nolds, Davis & Co., of Ft. Smith, Ark., as their interest may
appear. Fourth. The residue, if any, shall be paid to all
the balance of our creditors, share and share alike." Rey-
nolds, Davis & Co., the appellees, and some of the creditors
of C. E. Willey & Son, sued out a writ of attachment in an
action brought by them upon their account in the sum of
$250 against C. E. Willey & Son, and caused the writ to be
levied by the United States marshal upon the property
transferred by C. E. Willey & Son to the interpleader, Her-
bert Kneeland; alleging in the affidavit for attachment "that
defendants have sold, conveyed or otherwise disposed of
their property, or suffered or permitted it to be sold, with
the fraudulent intention to cheat, hinder, or delay their
creditors; are about to sell, convey, or otherwise dispose of
their property with such intent." The assignee, Herbert
Kneeland, interpleaded for the goods attached, and by
agreement of all the parties the issues between the plaintiffs,
Reynolds, Davis & Co., and the defendants, C. E. Willey &
Son, and between the plaintiffs and Herbert Kneeland, the
interpleader, were submitted to the trial court upon one
proposition,—the validity or invalidity of the deed of assign-
ment, upon its face, as to Reynolds, Davis & Co., creditors.
The trial court held that the deed of assignment was void
on its face, sustained the plaintiffs' attachment, and render-
ed judgment in their favor. A motion for a new trial was
made and overruled, and an appeal prayed and allowed to
this court.

   *William T. Hutchings* and *Albert Z. English*, for appel-
lants.

   *C. E. Warner, N. B. Maxey,* and *J. P. Clayton,* for ap-
pellees,

THOMAS, J.    The sole question to be determined here is whether or not the deed of assignment executed and delivered by C. E. Willey & Son to Herbert Kneeland, interpleader, is fraudulent and void upon its face as to Reynolds, Davis & Co., attaching creditors.    If it is, the plaintiffs and appellees will have judgment for fendants, their debt, and sustaining the attachment, against the de- C. E. Willey & Son, and also in their favor and against the interpleader upon his interplea.    If it is not, the defendants will have judgment against the plaintiffs upon the attachment issue, and the interpleader will have judgment for the goods attached or their proceeds.

It is contended by appellees that the deed of assignment was void as to them because it did not fix the amount due any of the creditors, except to the attorneys who drew the deed; and the case of Waples-Platter Co. vs Low, 4 C. C. A. 205, 54 Fed. 93,—apparently the authority upon which the judgment of the trial court was based,—is cited to sustain this contention.    That was an Indian Territory case, decided by the United States circuit court of appeals for the Eighth circuit, and the issues involved were similar to those involved in this cause, but the facts were different.    In that case Low executed a deed of assignment to one Hancock, as assignee, in which he preferred Colbert La Flore for the sum of $1,500, when he was only indebted to him in the sum of $500, and at the trial Low testified that he knew at the time he preferred Colbert that he only owed him $500, and his only excuse was that he secretly intended thereby to secure the payment, not only of the $500 he owed Colbert La Flore, but also of $1,000 that he owed to one William La Flore, who was in no way connected in business with Colbert; and Judge Sanborn, in delivering the opinion of the court, said:    "There were three questions that, under some phases of this case, it might be necessary for the jury to de-

(23)

termine in this action. They were: (1) Was the defendant, Low, about to sell, convey, or otherwise dispose of his property with the fraudulent intent to cheat, hinder, or delay his creditors, at the commencement of the action? (2) Was the order of attachment delivered to the deputy marshal before or after the assignment to the interpleader was delivered and accepted? (3) Did the interpleader have any knowledge of or part in the defendant's scheme to cheat, hinder, or delay his creditors (if he had any such scheme) before he accepted the assignment? If the jury answered the first question in the affirmative, the plaintiff would be entitled to a verdict against the defendant, regardless of either of the others; but an affirmative answer to this question would not authorize a verdict or judgment against the interpleader, unless an affirmative answer was also given to one of the two other questions presented. In other words, to warrant a verdict against the interpleader, the jury must have found, not only that the defendant was about to sell, convey, or otherwise dispose of his property with the fraudulent intent to cheat, hinder, or delay his creditors, when the action was commenced, but they must have also found either that the order of attachment was delivered to the marshal before the delivery and acceptance of the assignment had been completed, or that the interpleader, before or at the time of his acceptance of it, participated in, or was aware of, the intended fraud. Thus, it will be seen that the issues between the plaintiff and the defendant and those between the plaintiff and the interpleader were not identical, and, to prevent confusion and error, it was imperatively necessary that the court should keep the broad distinction between them clearly in mind, and should carefully and distinctly present it to the jury in its charge. * * * The fact that defendant in his assignment preferred Colbert La Flore for $1,500, when he knew he owed him but $500, with the intent to subsequently direct the application of the surplus, $1,000,

to the payment of another debt, not preferred by the assignment, was conclusive evidence against Low of the fraudulent character of this assignment. It may be admitted that where an assignor, by mistake, or through ignorance or uncertainty as to his liability, erroneously but in good faith states the amount of his liability to some creditor too high, the assignment may yet be sustained (Farwell vs Maxwell, 34 Fed. 727), though it will be noticed that the assignment in this case just cited was not one giving preferences, and stands upon a very different ground from a preferential assignment like that in the case at bar, where the assignee is required by statute to give a bond conditioned that he will 'sell the property to the best advantage, and pay the proceeds thereof to the creditors mentioned in said assignment according to the terms thereof.' Mansf. Dig. § 305; Rice vs Frayser, 24 Fed. 460, 464. * * * If upon such a state of facts such a preference is a lawful exercise of the power of the assignor, no reason is perceived why a preferential assignment securing a single creditor, to whom the defendant owes but a dollar, for an amount equal to the entire value of his assets, might not be sustained upon the testimony of the assignor, subsequently given, declaring to what creditors, and to what amounts, he intended to apply the proceeds of his property. * * * It is sufficient to say that the assignment is not void upon its face, since its vice does not there appear, and hence the assignee may have received and accepted it in good faith, without notice of the intended fraud of the assignor; but, so far as the assignor is concerned, when he knowingly prefers a creditor in his assignment for an amount far in excess of the debt he actually owes him, for the express purpose of creating a secret trust in the surplus above his debt, to the end that he may subsequently dispose of it according to his own secret intention, which he may change at any moment, he thereby presents conclusive evidence of his fraudulent intent in making the

assignment, upon every principle applicable to such instru-
ments.  Nothing is better settled than that the assignment in
this class of cases, where preferences are permitted, as at
common law, and by the statutes of Arkansas, must defi-
nitely fix the rights of the parties beneficially interested,
and that nothing shall be left to the discretion or further
control of the assignor.   In Averill vs Loucks, 6 Barb. 470,
where a preferential assignment provided that the debts
should be paid in the order provided in schedules to be filed
within 60 days after its date, Judge Paige declared it void
because it did not fix definitely the rights of the parties, but
reserved to the assignor the control over the proceeds of
his property.   To the same effect are Pierson vs Manning,
2 Mich. 444, 450;  Grover vs Wakeman, 11 Wend. 187:  Lu-
kins vs Aird, 6 Wall. 78;  Mackie vs Cairns, 5 Cow. 547;
Seaving vs Brinkerhoff, 5 Johns. Ch. 329;  Barney vs Griffin,
2 N. Y. 365;  Gazzam vs Poyntz, 4 Ala  374;  Wiswall vs Tick-
nor, 6 Ala. 179.   To give judicial sanction to an assignment
making such a preference as this in question would enable
assignors to force compromises with their unpreferred cred-
itors by presenting exaggerated statements of their prefer-
red liabilities, would permit the creation and execution of
secret trusts, and would enable assignors to control at will
the proceeds of their property after assignments had been
made;  and these are the very vices in assignments against
which courts have constantly guarded, and must continue to
guard, the public.   It is plain, therefore, that, so far as the
issue between the plaintiff and defendant was concerned,
there was error in the fifth instruction, which charged the
jury that, before they could render a verdict for the plain-
tiff, they must find that the interpleader was aware of, or
participated in, the defendant's fraud.   No such finding was
required to warrant a verdict upon that issue.   *  *  *   The
result is that upon the trial of an issue between the plaintiff
and defendant, raised by the denial by the latter of the

plaintiff's allegation in his affidavit for attachment that the defendant was at the commencement of the action about to sell, convey, or otherwise dispose of his property with the fraudulent intention to cheat, hinder, or delay his creditors, the knowledge or participation of the assignee of the defendant for the benefit of his creditors in his fraud is not material. An assignment whereby an insolvent assignor knowingly prefers a creditor for an amount in excess of his indebtedness to him, with the secret intent to cause the surplus above his actual indebtedness to such creditor to be subsequently applied to the payment of a debt he owes to another creditor, who is not secured by the assignment, is conclusive evidence of the assignor's intent thereby to cheat, hinder, or delay his unsecured creditors."

Counsel for appellees also cite the case of Caton vs Mosely, 25 Tex. 374, and in the opinion of the court in that case we find the following: When the assignment recited that the assignor was indebted to sundry persons, but did not name them, nor specify the amount of the assignor's indebtedness, but directed the assignee to hold said property, and dispose of the same as soon as he could do so to the best advantage, for the benefit of any creditors generally, the assignment was held invalid, for uncertainty in not furnishing some means of ascertaining who were the creditors. But in many of the states a method for ascertaining the debts to be paid is provided, and this objection would not, in these states, be of the same force. And in the case of Hudson vs Revett, 5 Bing. 368, also cited by appellees to sustain the judgment of the trial court, a blank was left in the deed for one of the principal debts, the precise amount of which was not ascertained until after its execution by the debtor, when it was inserted, in his presence and with his assent. It was held that by reason of such assent the deed was valid from that time, but the court laid it down clearly that it was not a complete deed until then.

On the other hand, appellants cited to us the follow-
ing: Mr. Burrill, in his work upon assignments (5th Ed.; §
146), says, "It has been held that a debt, to secure which a
deed of trust has been executed, may be described by the
name of the debtor, and its amount left to be ascertained";
citing Platt vs Hedge, 8 Iowa, 386; Van Hook vs Walton, 28
Tex. 59; England vs Reynolds, 33 Ala. 370; Brown vs Knox.
6 Mo. 302; Bank vs Huth, 4 B. Mon. 423; Butt vs Peck, 1
Daly, 83; Halsey vs Fairbanks, 4 Mason, 206, Fed, Cas. No.
5,964; Layson vs Rowan, 7 Rob. (La.) 1. And to the case
of Sanger vs Flow, 1 C. C. A. 56, 48 Fed. 153, which was an
Indian Territory case, and the opinion was delivered by
Judge Caldwell. The court said, among other things: "The
names and amounts due the unpreferred creditors are not
given in the deed, or in any schedule attached thereto. It
is claimed that the failure to attach such a schedule avoids
the deed. The law is otherwise. Burrill, Assignm. pp.
186, 205. Such a schedule, if filed, would not be conclusive
as to who were creditors, or to the amount of their debts.
If any surplus remains to be distributed to such creditors,
and there is any doubt as to who they are, or to the amount
of their debts, the assignee should refer the matter to the
court of chancery administering the trust; and that court
will by some appropriate proceeding determine these ques-
tions, and order the fund disrtributed accordingly."

We are of the opinion that the authorities cited by
appellees do not sustain their contention. In the case of
Waples-Platter Co. vs Low, the court simply held that Low,
in preferring Colbert La Flore for $1,500, when he only
owed him $500, with the intent to subsequently direct the
application of the surplus $1,000 to the payment of another
debt, was conclusive evidence against Low of the fraudulent
character of the assignment, and would sustain the attach-
ment, but, in order to defeat the interpleader, it would be
incumbent for the attaching creditor to establish that he

(the assignee) was aware of or participated in this fraudulent scheme of Low. This is not the case at bar. It is true that Judge Sanborn, in the opinion of the court in that case, stated that nothing is better settled than that the rights of parties beneficially interested in preferential deeds of assignment must be definitely fixed, and that nothing shall be left to the discretion or further control of the assignor. We believe that the deed in this case fixed with sufficient certainty the rights of the parties interested. Hutchings & English were to be paid the sum of $100, and J. Foster & Son and the Shibley-Wood Grocer Company were to be paid in full the amount of the indebtedness due them from C. E. Willey & Son, and the residue applied upon the indebtedness due Fannie Willey. There was nothing left to the discretion or control of the assignor, other than there would have been if he had named the amount he believed to be due each; and, as we have seen, that would not be conclusive, and, if not conclusive, it seems to us to be immaterial. In Caton vs Mosely the assignor did not name his creditors, or state the amounts due them; and the assignment was held invalid, because in Texas there was no way of ascertaining who the creditors were, or the amounts due them. And even in that case it was stated that, in states where a method is provided for ascertaining the names of the creditors and amounts due, this objection would not be tenable. We have seen, from the opinion of the United States court of appeals in Sanger vs Flow, supra, that there is a method of ascertaining in the Indian Territory, by reference of the matter to the court, which will by some appropriate proceeding determine the amounts due each of the creditors of C. E. Willey & Son, whether mentioned in the deed or not. This will not be necessary as to the amount for which Hutchings & English are preferred, as the indebtedness and the creditor in that case could not be better described, unless this indebtedness is questioned by the assignee or some creditor.

We are of the opinion that the omission of the assignor to state the amount due from him to each of the creditors mentioned in the deed would not of itself render the deed of assignment void upon its face, and the judgment of the trial court in that respect is therefore reversed, and the cause remanded. Reversed and remanded.

CLAYTON and TOWNSEND, JJ., concur.